## JAMES MENO *vs.* STATE OF MARYLAND.

*Dying declarations. Abortion: woman not an accomplice. Evidence: relations with other men; other abortions produced by accused. Attorneys: improper remarks before jury. Experts: conflicting testimony.*

Where, some six days before her death, a woman was told by the attending physician that she was dying, and then on being asked if she understood her condition and that she was going to die, without speaking, shook her head "Yes," and answered other questions put to her by affirmative or negative inclinations of the head, it was *held,* that the prerequisites for her testimony to be admissible as a dying declaration had been complied with, but that the credibility of her testimony was for the jury to decide.                                    p. 437

A woman upon whom an abortion has been performed is not an accomplice. She is a competent witness for the prosecution, and her testimony, if satisfactorily establishing the guilt of the accused, is admissible without corroborating testimony.
                                                            p. 437

When physicians' testimony, as experts, as to the condition and mental state of a party who made a dying declaration is conflicting, it is for the jury to decide.          p. 438

In prosecutions for the crime of abortion, evidence of the relations of the woman with other men is not admissible.

p. 439

Evidence that the accused performed abortions in other cases is not admissible.                     p. 440

Cases in which evidence may be given of other acts of the accused similar to the one with which he is charged, are restricted to where the several acts are connected together and form part of one entire scheme or transaction.             p. 440

Improper language or remarks of counsel, likely to prejudice the minds of the jury against the accused, is ground for a reversal.                             p. 441

Such language or conduct should be promptly checked by the Court and the jury ordered not to consider it.         p. 442

The answer of a witness evidently suggested or prompted by such remarks by the State's Attorney is improper evidence, and should be excluded.                     p. 443

*Decided February 2nd, 1912.*

Appeal from the Circuit Court for Dorchester County (JONES and TOADVIN, JJ.).

The appellant was tried under an indictment for the murder of one Nellie Robinson, by causing her, without any legal justification or excuse, a miscarriage and abortion; being found guilty and sentenced to six years in the State Penitentiary, this appeal was taken.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Frederick H. Fletcher* (with a brief by *Goldsborough* and *Fletcher*), for the appellant.

*V. Colvin Trice* and *Edgar Allan Poe,* the Attorney General, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The appellant in this case was indicted, tried and convicted for having caused the death of Nellie Robinson by an abortion practiced upon her. The exceptions are twenty in number, though the points involved were considerably less, as exceptions were reserved to rulings of the Court upon offers of evidence where the same legal proposition was involved in repeated tenders. The most important is the question of the admissibility of the dying declaration of the deceased, which forms the basis of the 10th and 20th exceptions.

What is necessary to render a dying declaration admissible has been so recently passed upon by this Court in the cases of *Worthington* v. *The State,* 92 Md. 222, and *Hawkins* v. *The State,* 98 Md. 355, as to make its repetition unnecessary. The declaration in this case was made in Camden, N. J., to a detective of that city, at a time when Nellie Robinson was in the hospital, and but a few days before her death. She had been told by the doctor in attendance that she was going to die, and was at the time either unable to speak, or unwilling to do so, but communicated with those grouped about her bed by affirmative or negative inclinations of her head. After having been informed by the doctor of her condition, and impending death, she was asked by Carroll, the detective, "Do you realize that you are going to die? And she shook her head, yes." This conversation apparently took place on the 19th December, 1910, and she died on Sunday following, December 25th. The requisites for the admissibility of the dying declaration were complied with, the question of the amount of credence to be placed in it, was a question for the jury. It has been suggested in the brief of the appellant, that it is not admissible, however, because if an abortion had been practiced, the girl was an accomplice to its perpetration, and it was, therefore, the statement of an accomplice upon which, unless corroborated, no conviction could be properly had. This argument is not

supported by authorities.  A woman on whom an abortion has been performed is regarded as a victim rather than an accomplice, and even if she be deemed an accomplice, she is competent as a witness for the prosecution of the accused, and her evidence does not require corroboration when it establishes satisfactory proof of guilt, though in all such cases the credibility of it is to be passed upon by the jury under proper caution from the Court, as to the amount of credence to be placed in it.  *Dunn* v. *The People,* 86 Am. Dec. 319; *State* v. *Smith,* 99 Iowa, 26; *State* v. *Owens,* 22 Minn. 238; *State* v. *Pearce,* 56 Minn. 226; *People* v. *Commonwealth,* 87 Ky. 487; *Smart* v. *State,* 112 Tenn. 539; *Watson* v. *State,* 9 Tex. Apps. 237; *People* v. *Vedder,* 98 N. Y. 630.

A further objection was made to the admissibility of the dying declaration upon the ground that Nellie Robinson did not possess sufficient understanding at the time when the declaration was made to entitle it to any probative force. The evidence upon this point given by the physicians is conflicting.  Dr. Shields, who was in attendance upon the girl, states her condition and what she did, the manner in which she replied to questions, but does not express any opinion whatever as to her mental condition at the time. Dr. Mace and Dr. Steele were both examined as experts, they not having attended the deceased woman, and they differ quite radically as to her probable mental condition at the time.  It was therefore proper that the jury should pass upon this, as upon the other matters of fact which were involved in the trial of the case, and no error therefore can be imputed to the Court for its rulings upon the 10th and 20th exceptions.

The 1st, 4th, 5th, 9th, 15th, 16th, 17th, 18th and 19th bills of exception were all reserved to rulings of the Court upon attempts to introduce into evidence testimony which would tend to show that the deceased girl had had improper relations with another man or other men, and thus negative

and inference of motive upon the part of this traverser for the perpetration of the abortion. The Court uniformly refused to admit all testimony of this character, as being immaterial to the issue before the jury. The question to be determined in the case was not the unchastity of the girl with any other man or men, but whether this traverser had committed an abortion upon her. And this he might perfectly well have done, no matter who was the father of her child, and even if she had lead a notoriously improper life. The introduction of the evidence could only have tended to raise an immaterial and collateral issue, and so divert the attention of the jury from the real question involved. Much reliance for the admissibility of this evidence was placed upon the decision in the case of *Dunn* v. *The People*, 29 N. Y. 526; in which case evidence of such a character was admitted; but it was admitted in that case because of contradictory statements made by the prosecuting witness, as to the paternity of her child, and the purpose of it was not to establish the paternity, or motive for the offense, or the lack of such motive, but for the purpose of discrediting the evidence of the prosecuting witness, and in the separate opinion filed by INGRAHAM, J., in that case, he said: "Evidence to prove who was the father of the child can scarcely be said to be material to prove that the prisoner had been guilty of the crime charged, viz, aiding or advising the producing of an abortion." The testimony sought to be elicited was not the general character of the deceased girl for lewdness, but her conduct with a particular man, and it was therefore analagous to the rule laid down in *Shartzer* v. *The State*, 63 Md. 149, and *Richardson* v. *The State*, 103 Md. 112, holding such evidence inadmissible.

This evidence being properly excluded it follows that no proper objection could be made to the remarks of the Court which formed the basis of the third exception.

Nor do we find any reversible error in the rulings of the trial Court to which the 2nd, 11th, 12th, 13th and 14th bills of exceptions were taken.

The State attempted to prove by the witness Ludi, that the accused had told him that he had performed operations on or treated other girls as showing a familarity on the part of the traverser with what could be done to rid a woman of a child. This evidence was admitted over the objection of counsel, and this ruling of the Court was made the subject of the 8th exception. This evidence was inadmissible and should have been excluded. There is a class of cases in which evidence may be given of other similar acts done by an accused, but this class of cases is restricted to where the several acts are connected together and form part of one entire scheme or transaction, so that one of the acts forms a basis for a reasonable and proper inference as to the purpose and intent with which the particular act was performed for which the accused was then on trial. *Lamb* v. *The State,* 66 Md. 285.

The answer of the witness Ludi to these questions, however, was so vague and inconclusive that the traverser can hardly have been injured thereby, and unless there is some additional reason, would not, standing alone, justify this Court in reversing the conviction.

In the course of the cross-examination of the witness Annie Wharton, produced by the State, she was asked whether there was anything that she had been directed by the State, at the habeas corpus proceedings, which had preceded the trial of the case, not to testify to unless asked about them, to which she replied, "Yes, sir." Then the following took place:

"Q. What were those subjects?

A. I got in conversation with Nellie and I asked her who did this—

Mr. Andrews (State's Attorney): She told her it was old, dirty, black haired Jim that did it; if you want to know what it was she told her."

Whereupon the counsel for the accused took an exception (6th bill of exceptions) to the conduct of the State's Attorney. The witness Mrs. Wharton, was a confinement nurse,

who was called in at Camden to care for the deceased at the time of the miscarriage, at her aunt's house. She was not the nurse at the hospital where Nellie Robinson was subsequently taken, and statements made to this witness were made before the deceased had been advised by the physician of her approaching death, and formed no part of the dying declaration. The statement made by the State's Attorney could not have been admitted in evidence if it had been testified to by the witness, for it was clearly hearsay. For the State's Attorney to inject it into the case in the manner he did was highly improper, and he should have been checked immediately by the Court, and the jury instructed to totally disregard his remark, neither of which things appear to have been done. The question for this Court is whether the improper remark of the State's Attorney was of such a character, that it must be regarded as calculated to have unduly prejudiced the jury in its finding, and thus to prevent a fair and impartial verdict. If so, the verdict must be set aside and the conviction reversed.

The Courts of this country have been frequently called upon to pass upon similar occurrences, and the cases will be found very fully collected, classified and digested in an exceptionably able note to the case of the *People* v. *Fielding,* 46 L. R. A. 641, *et seq.* It is there said as a conclusion from all the cases that,

"Since a conviction will only be reversed for improper language of the prosecuting attorney in a criminal case where it was such as to prejudice the defendant, even though due objection was made, a ruling had, and an exception taken, and the language was not withdrawn, it follows that the question whether or not a reversal will be had for that cause will depend upon the degree of impropriety of the language, and that the test will be the question whether or not it was so improper as to prejudice the jury against the accused and deprive him of a fair trial."

In this case we have a foreigner accused of practicing an abortion upon a young girl nineteen or twenty years of age;

no direct testimony is offered of the perpetration of the crime, the case of the State resting mainly upon a dying declaration of the girl, who uttered no word, but gave her statement by affirmative or negative nods to questions put to her by a detective through her father in a hospital away from her home, and the proceeding is interrupted by the State's Attorney, who injects a statement alleged to have been made by the girl, and which would not have been admissible evidence had the State attempted to introduce it. The remark of the State's officer was not checked by the Court, nor were the jury cautioned or instructed by the Court to pay no heed to it. In such a condition it seems impossible that the jury should not have been unduly prejudiced against the accused.

The Court is not unmindful of the fact that where the improper conduct or remark of the prosecuting officer has been called forth by like conduct on the part of the counsel for the prisoner, Courts are not disposed to set aside a verdict because of such conduct. This rule has been laid down and recognized in quite a long line of cases which will be found collected in the note before referred to; but the record in this case does not disclose any such improper conduct on the part of the counsel for the prisoner in this case, and, therefore, this ground of justification or palliation can not be invoked. For this reason the conviction below must be reversed, and the verdict set aside.

There remains but one additional exception to be considered, namely, the seventh. Immediately following the incident which give rise to the 6th exception, the witness Annie Wharton was asked by the counsel for the accused, "What were the subjects that you were asked not to testify about? I mean subjects only, not any conversations or details?" And thereupon the witness answered, "The subjects were what Nellie told me—not to say what Nellie told me about dirty, black-haired Jim." The counsel for the defence thereupon moved to strike out that portion of the answer which

referred to dirty, black-haired Jim, which motion the Court overruled. In view of the incident which had just preceded this it is impossible to avoid the conclusion that the expression of the witness had been prompted by the remark of the State's Attorney which as has already been said, was improper, sufficiently so to vitiate the conviction. It follows that the motion to strike out should have been granted and that the overruling of that motion by the Court was error.

For the reasons hereinbefore set forth, the conviction below must be set aside, the verdict stricken out, and the case remanded for a new trial.

*Judgment reversed, and case remanded for new trial.*