WALTER FREDERICK JONES *v.* STATE OF MARYLAND.

[No. 5, January Term, 1944.]

*Decided February 10, 1944.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*Jerome A. Loughran* and *Charles E. Hogg* for the appellant.

*C. Ferdinand Sybert, State's Attorney for Howard County,* and *J. Edgar Harvey, Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Walter Frederick Jones, convicted on August 2, 1943, in the Circuit Court for Howard County before a jury of murder in the first degree for killing his wife, Lena Jones, also known as Lena Taylor, on July 3, 1943, and as a result thereof sentenced to death, appeals to this court from the verdict, judgment and sentence. The case comes

here on five exceptions to the ruling of the trial court on the evidence and on one exception to an instruction given by the trial court to the jury.

The first exception was taken after the assistant medical examiner testified as to the wound causing death and was then asked by the State's Attorney: "Other than that wound, what was the condition of the body?" To which question the defendant objected and which the court allowed to be answered provided the State could connect the defendant with old scars on the body of the deceased, to which ruling the defendant excepted. The defendant later admitted that he inflicted the two old scars over the upper leg and thigh of the deceased. The State further showed that the accused had been convicted in Philadelphia in 1941 of assault with intent to kill his wife by cutting her, and a patrolman in the Bureau of Police in the City of Philadelphia testified at the trial in Howard County that he arrested the defendant at that time for the crime of which he was convicted, and at that time he saw bandages around the deceased woman's neck and right arm. This was sufficient to connect the defendant with the old scar on the body of the deceased starting on the right side much below the right collar bone and running diagonally across the chest. As the State did connect the defendant with these old scars, we see no error in this ruling.

The second exception was taken when the State was allowed in its direct testimony, before the defendant had taken the stand, to offer in evidence a warrant sworn out by the deceased charging the accused on the 14th day of June, 1943, with an assault upon her with intent to kill. The complaining witness later withdrew this warrant on the condition that the accused leave the State, which he did not do. The accused was never tried on this warrant. The third exception was taken to the admission in direct testimony of State's exhibits numbers seven and eight. Exhibit number seven showed that the accused had been convicted in Philadelphia on the 30th day of September, 1939, for aggravated assault and

battery on the deceased and as a result sentenced to six months in the county prison. Exhibit number eight showed that the accused had been convicted in Philadelphia on January 28, 1941, for assault with intent to kill the deceased and as a result sentenced to not less than eighteen months nor more than three years in the county prison. As the same question is presented by exceptions two and three, we will consider them together. It is a well-known proposition of law that evidence of unconnected and unrelated crimes which does not show knowledge, motive, intent, a common scheme or identification is inadmissible against a defendant in a criminal case as tending to show that he committed the crime whereof he stands indicted in such case. *McClelland v. State,* 138 Md. 533, 536, 114 A. 584; *Dobbs v. State,* 148 Md. 34, 46, 129 A. 275. It is equally well established in our law that when proof shows such connection between the different transactions as raises a fair inference of a common motive in each, evidence of other crimes is admissible. If evidence is admissible on other general grounds, there is no objection that it discloses other offenses. The test to be applied in determining the admissibility is the connection of the fact proved with the offense charged as evidence which has a natural tendency to establish the fact at issue. *Callahan v. State,* 174 Md. 47, 54, 197 A. 589; *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 605; *Mitchell v. State,* 178 Md. 579, 582, 16 A. 2d 161. Evidence which is relevant is not made inadmissible by reason of the fact that it tends to prove the defendant guilty of a crime other than the one for which he is indicted. Such evidence is not admitted because it is proof of the other crime, but because of its relevancy to the charge upon trial. *Kernan v. State,* 65 Md. 253, 258, 4 A. 124; *Cothron v. State,* 138 Md. 101, 109, 113 A. 620; *Callahan v. State, supra.* Quoting from *Wharton's Criminal Evidence,* 11th Ed., Vol. I, Sec. 287: "On a charge of uxoricide, it is relevant to show that the accused made declarations reflecting on his wife, the deceased, to show a long course of ill treat-

ment; and to show that they quarreled, or that he continuously maltreated her." Where motive and intent are elements of the crime charged, generally speaking, evidence of other crimes is admissible for the purpose of showing when it fairly tends to do so—motive and intent. Generally speaking, while guilt cannot be established by proving that the defendant has committed other crimes, it is firmly established that evidence of acts may be admitted to show intent or common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Meno v. State,* 117 Md. 435, 83 A. 759; *Young v. State,* 152 Md. 89, 136 A. 46; *Wilson v. State,* 181 Md. 1, 3, 26 A. 2d 770. In the case now before this court, the evidence presented, the subject of these two exceptions, shows a long course of ill treatment of the deceased by the accused; that they frequently quarreled and, although they renewed relationships at various times, there was almost a continuous state of hostility between them. These other crimes of the accused, having been committed on the same person, are so closely connected to the offense charged as to be evidence as to the intent and motive of the accused in this case. We therefore believe that the trial court was correct in admitting this evidence, the weight of it to be determined by the jury.

The fourth exception was taken when the State was allowed to ask the accused on cross-examination, in reference to his actions after the crime was committed: "You knew you had been wrong enough to go back to Philadelphia." This exception was not elaborated on by the appellant in his brief and, in our opinion, was admissible on cross-examination as to his actions immediately after the crime in leaving Howard County and going to Philadelphia. *Cothron v. State, supra,* 138 Md. at page 106, 113 A. at page 622.

The fifth exception gives this court more concern. While the defendant was on the stand, he was questioned on re-direct examination as follows, which constitutes

the fifth exception:

(Mr. Hogg) "Q. To your knowledge, has your wife, did your wife ever attack Trooper Hignutt?"

(Mr. Sybert) "I object."

(The Court) "Sustain the objection."

"Q. Or Officer Moxley or Constable Hunt while she was drinking?"

(Mr. Sybert) "I object."

(The Court) "Sustain the objection."

(Mr. Loughran) "We want to lay the foundation to show that knowledge was brought home to him."

(The Court) "You can't do it by an isolated incident and we stand on that ruling."

This exception refers to the unsuccessful efforts of the defendant to prove that he knew about three weeks before Lena Jones was killed, while drinking she attacked Trooper Hignutt, Officer Moxley and Constable Hunt in Howard County. The evidence sought to be introduced was not to show the character of the accused, but to show the turbulent disposition of the deceased person. There is evidence in the case now before this court of an overt, hostile act against the defendant by the person killed. Less than five minutes before she was killed, Lena smacked the accused in the face. She had been drinking. After an argument about her family, Lena chased the accused up the road, and one of the witnesses, Rachel Fuller, called to her: "Come back, Lena, don't do that." Three of the State witnesses testified that she stopped, and when she stopped, the accused ran up and inflicted the mortal blow. None of the State witnesses saw anything in the hand of the deceased while she was chasing him up the road. After her death a paper of matches was found in her right hand, she being right-handed. None of the State witnesses saw the deceased raise her hand. Two witnesses testified that he had previously threatened to kill her. There was testimony to show that at the time the accused was convicted of assault and battery on her in Philadelphia in 1939, she was also convicted of assault and battery on him and

received the same sentence given him. There is also testimony that she threw an iron at him a few weeks before she was killed. The accused testified that at the time that Lena was killed, she was chasing him down the road and he heard Rachel Fuller "holler": "Lena, don't do that." As he turned around, he saw her swipe at him with some sharp instrument in her hand, and he "went" in his pocket and pulled out his knife and stabbed at his wife. The evidence further shows without doubt that an ice pick was found lying in the road alongside the body of the deceased. The evidence points to the fact that the mortal blow was inflicted with a knife and not with an ice pick. There is, therefore, evidence that she smacked him in the mouth, chased him down the road, and the fact that an ice pick was found near her body, which cannot be otherwise accounted for, is some corroboration of his testimony that she had a sharp instrument in her hand.

It is, of course, generally true that the reputation of the deceased cannot be shown by evidence of specific acts. However, where there is testimony tending to support the theory of self-defense, the presence of such testimony entitles the defendant to the benefit of certain rules of evidence which would not otherwise be available. It is competent for him to prove his knowledge of facts which would have a reasonable tendency to justify his asserted belief as to the existence of a deadly purpose in the overt acts of the deceased. It is for the jury to decide upon the evidence in the case whether the defendant was, in fact, being approached by the deceased with real or apparent hostile and dangerous intent. On the issue whether or not the accused had reasonable grounds to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased. Previous acts of violence by the deceased, especially if committed recently, known to the defendant, might have an even stronger influence on his mind than would be produced by knowledge of the reputation of the deceased for violence. While

the existence of such a reputation could not be shown by evidence of specific acts, yet belligerent and dangerous conduct of the deceased of which the accused had knowledge should be provable upon the question as to the reasonableness of his apprehension of serious injury and as a possible excuse for the measure of resistance which he adopted. Where the defendant claims that he acted in self-defense, and there is some testimony of an overt act on the part of the deceased and some testimony tending to support the theory of self-defense, where the necessity for the defendant's resorting to it should be judged of by the facts as they appeared to him, whatever they truly were, he may give in evidence whatever he knew of the character, prior conduct, threats or other utterances of the person with whom he was contending, which is admitted in evidence, not to show that the deceased was bad, but in this special instance was dangerous. *Turpin v. State*, 55 Md. 462, 475; *Stockham v. Malcolm*, 111 Md. 615, 622, 74 A. 569, 19 Ann. Cas. 759; *Winner v. State*, 144 Md. 682, 125 A. 397; 3 *Bishop's New Criminal Procedure*, 2nd Ed., 1599; *Sneed v. Territory*, 16 Okl. 641, 86 P. 70, 8 Ann. Cas. 354; *People v. Harris*, 95 Mich. 87, 54, N. W. 648; *State v. Feeley*, 194 Mo. 300, 92 S. W. 663, 3 L. R. A., N. S., 351, 372, 112 Am. St. Rep. 511; 64 A. L. R., 1029-1047.

In the case of *Jenkins v State*, 80 Md. 72, 30 A. 566, where the defendant was tried for assault with intent to kill, the defense was not allowed to prove that the prosecuting witness, to the knowledge of the defendant, had threatened another person with a gun during the preceding year. In that case there was no evidence of any overt, hostile act against the defendant by the person assaulted.

In the case now before this court, there being some testimony tending to support the theory of self-defense, we feel that evidence that this woman, drinking at the time she was killed, had three weeks before, while drinking, attacked three officers, the accused having knowledge of it, might have some tendency to justify his asserted be-

lief as to the existence of a deadly purpose in the overt act of his wife. This testimony should have been submitted to the jury as it might very well have been of some help in determining at least the degree of crime. Although we recognize that this evidence was rejected by the trial court in good faith, we think that it should have been admitted as there was some testimony to support the thory of self-defense, and for that reason, the failure to admit this testimony constitutes reversible error. A person who while drinking will attack three officers, might be considered a person of a turbulent or vicious disposition when drinking.

The sixth exception is to the instruction given to the jury by the trial court after the State's Attorney and the attorney for the traverser had argued the case. The court instructed the jury as to the five possible verdicts under the indictment, any one of which they could render. Advice was also given as to the penalty for murder in the first degree. From the record, no objection nor exception was taken by the appellant to this instruction. The appellant particularly objects for the reason that, although the jury was told what the penalty was for murder in the first degree, no information was given by the court as to the penalty for murder in the second degree or manslaughter. It is almost the universal custom in this State for the trial court in a murder case to instruct the jury as to the forms of verdict which they can render. It is true that usually counsel are asked whether they have any objection to the court so instructing the jury, and usually no objection is made. We are of the opinion that if the trial judge sees fit to instruct as to the penalty for some of the verdicts which the jury may render, information should be given as to the penalty for all of the verdicts. However, as there was no erroneous instruction as to the law, we do not consider this reversible error. Article 15, Section 5 of the Constitution of this State of course provides that in the trial of all criminal cases, the jury shall be the judges of law as well as of fact. It has been held many times that

the court has the right to advise the jury in a criminal case although not bound or required to do so. If the instruction given is erroneous and the jury have followed it to the injury of the accused, although given in an advisory form, it is subject to an exception and correction on appeal. *Franklin v. State,* 12 Md. 236; *Swann v. State,* 64 Md. 423, 1 A. 872; *Beard v. State,* 71 Md. 275, 17 A. 1044; *Guy v. State,* 96 Md. 692, 699, 54 A. 879; *Esterline v. State,* 105 Md. 629, 636, 66 A. 269; *Dick v. State,* 107 Md. 11, 68 A. 286, 576; *Luery v. State,* 116 Md. 284, 292, 81 A. 681, 685, Ann. Cas. 1913D, 161; *Cochran v. State,* 119 Md. 539, 552, 87 A. 400; *Vogel v. State,* 163 Md. 267, 162 A. 705; *Bevans v. State,* 180 Md. 443, 449, 24 A. 2d 792.

The appellant here was indicted for a serious crime, and he was entitled to all the presumptions and to all the safeguards which the law has provided for his protection and for his personal liberty. He was presumed to be innocent, and this presumption attended him throughout the trial. He had a right to be judged by the law of the land and where he was denied the right to offer evidence in his own defense, the subject of the fifth exception, to which the jury might have given weight, it is the duty of this court to reverse the judgment and award a new trial. *Lanasa v. State,* 109 Md. 602, 621, 71 A. 1058.

*Judgment reversed, and new trial awarded.*