## MAZER *v.* STATE

[No. 118, September Term, 1962.]

42

*Decided March 4, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Douglas N. Sharetts,* for appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *E. Thomas Maxwell, Jr., State's Attorney* and *Assistant State's Attorney,* respectively, for Baltimore City on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendant-appellant, Mazer, was convicted on a charge of pandering in a jury trial in the Criminal Court of Baltimore. He was sentenced to imprisonment and appeals. In his brief he raises five contentions in somewhat different order from that in which we state them below. These are (a) that the trial court erred in not granting a postponement of the trial; (b) that the

State's sole witness, a prostitute, was an accomplice and hence that he could not be convicted on her uncorroborated testimony; (c) that the trial court erred in failing to caution the jury as to the amount of credence to be placed in the uncorroborated testimony of that witness; (d) that evidence of commissions paid on drinks, which involved violations of another law, should not have been admitted; and (e) that the evidence was insufficient to sustain the conviction. He also raised on oral argument a further question, that of a variance between the allegation of the indictment that the name of the woman concerned was unknown to the grand jury and evidence that she had appeared before it, which will be separately treated.

Mazer was the cashier of the Oasis Night Club in a district of Baltimore often known as "The Block." He at times was the acting manager and frequently worked behind one of the bars. The State's only witness, whose real name is Elaine Eckhardt, and whose professional or stage name is Kim Standlee, and who was generally referred to by that name during the trial, was employed at the Oasis from September 9 to December 2, 1960, as an "exotic dancer" (to adopt a possibly overelegant term from the appellant's brief) for two performances a night, six days a week, at a salary of approximately $100 a week. At times while at the Oasis and when not engaged in her work as an "exotic dancer," she would sit and drink with male customers. She was allowed to testify over objection that she was paid commissions on drinks. She testified that on a number of occasions, not exceeding ten, she had left the night club before her first scheduled performance to meet a male customer at some other place for purposes of prostitution, that on each such occasion she paid Mazer $20.00 in order to avoid her salary being docked, and that after leaving the club for such a purpose she would not return later the same night. She testified that there was no discussion between herself and Mazer with regard to the amount to be paid and that there was never any discussion between them as to her purpose in leaving. Mazer denied ever having received any money at any time from Miss Standlee. Miss Standlee was granted immunity by the State.

Mazer's trial was one of a series of cases based upon indict-

ments returned following a grand jury investigation of "The Block." His motion for a continuance was based upon extensive and allegedly unfavorable publicity growing out of two other "Block" trials, involving one Salsbury, the proprietor of the Oasis, where Mazer was employed. He filed as exhibits in support of his motion a number of newspaper clippings concerning the Salsbury cases, but did not see fit to reprint them or any part of them in the appendix to his brief. They are included in the record and some statements concerning them appear in comments of the trial court contained in appendices to Mazer's and the State's briefs, some of which were made in a conference with counsel out of the presence of the prospective jurors, and some in addressing the prospective jurors in the course of examining them on the *voir dire*.

The two Salsbury cases were tried within a period of approximately two weeks before the opening of the Mazer trial. In the first, Salsbury was indicted with Mazer for conspiracy to violate the pandering laws; Salsbury was tried separately and was acquitted on a directed verdict. Mazer's name was mentioned fairly extensively in reports of that trial. In the second case Salsbury was charged in a six-count indictment, which does not appear in the present record. A verdict was directed in his favor on one count (described as charging lewdness and assignation), he was found guilty by a jury on a charge of maintaining a disorderly house and was found not guilty on the other four counts. The trial judge during the conference with counsel expressed the view that the general effect of the publicity relating to the conspiracy charge in which Mazer was named as his co-conspirator and on which the court had directed a verdict of not guilty could not have created any public prejudice against Mazer, that the effect of the publicity attendant upon both Salsbury trials was favorable, rather than otherwise, to Mazer at the time of the latter's trial and that "the climate is now [as] favorable as it ever will be for the defendant * * * Mazer, insofar as his trial is concerned." The trial judge, after reading all of the newspaper clippings submitted, denied the motion and proceeded to the empanelling of the jury. None of the talesmen had sat in any of the prior "Block" cases and none had been offered for challenge by either side in any of them.

In addressing the prospective jurors, the trial judge prefaced his remarks by stating that Mazer was charged with the crime of pandering, that the case was one of a series of cases growing out of the then recent grand jury "Block" investigation, and that these cases had "attracted considerable public interest and have been rather thoroughly covered in the local press, on radio and on television." He next referred specifically to the two Salsbury trials and stated that they had "attracted a fair amount, perhaps a considerable amount of publicity." The judge then inquired, assuming that the talesmen had read or heard some of the details of those trials, whether any of them felt that "the press, radio or television coverages of the previous trials will preclude you from giving a fair and impartial trial to either the State or the Defense" in Mazer's case, and continued: "If so please raise your right hand and identify yourself." He then added, "I see no hands."

The court's next inquiry was whether any prospective juror had formed or expressed any opinion as to the guilt or innocence of Mazer. Again, if so, a show of hands was called for; and again none was raised.

The third and fourth inquiries, which the court stated were substantially the same as the previous questions, were somewhat more specific and were directed to the defense contention that the prospective jurors might have discussed the case with other members of their panels or might have heard discussion of such cases by other jurors. The court mentioned these possibilities and inquired (a) whether assuming that the prospective jurors had heard or participated in such discussions any of them felt that they could not give a fair and impartial trial to each side and (b) assuming that they had heard or overheard some discussion of cases, whether any of them had formed or expressed an opinion as to the guilt or innocence of Mazer. A show of hands was called for as to each of these inquiries, and again none was raised. The trial judge then inquired if the questions which he had asked were clear to the prospective jurors and whether there was anything with regard thereto that any of them would like to have clarified. No question having been asked and no request for clarification having been made, the court asked: "Are there any other questions counsel would like the Court to propound." Counsel for the defendant and for the State each answered "No."

The granting or refusal of a continuance is ordinarily within the discretion of the trial court and we find no abuse of discretion here. A similar question involving a suggestion for removal was recently before us in another case growing out of the same grand jury investigation. See *Seidman v. State*, 230 Md. 305, 324-25, 187 A. 2d 109, 120-21. We think that the Seidman case and the cases therein cited are controlling here. We may add that the examination of the prospective jurors on their *voir dire* went directly to the chief ground relied upon by the defendant. It developed no sign of prejudice. Even though we might not fully share the views of the learned trial judge with regard to the effect as to the appellant of the publicity attendant upon the Salsbury trials, we think that the court's questioning of jurors on the *voir dire* was sufficient to protect the defendant's right to a fair trial before an impartial jury. We note that the defendant's counsel considered the questions asked adequate. In addition, Salsbury's acquittal by a jury on four of the five counts submitted to the jury a few days before in itself strongly negatives that publicity attendant upon the "Block" cases created such a public state of mind as to prevent a fair trial for a "Block" character, specifically one closely associated with Salsbury, as the appellant was. We find no abuse of the trial court's discretion in denying the appellant's motion for a continuance.

The appellant's second contention is that the woman engaged in prostitution, from whose earnings he was charged with receiving money, was an accomplice and that her testimony therefore required corroboration. The same contention was made on behalf of the appellant in the *Seidman* case. It was extensively reviewed and rejected there because the women involved were held not to be accomplices of the alleged panderer. The *Seidman* case is controlling on this question in the present case, and we accordingly hold that the woman here involved was not an accomplice of the appellant.

The appellant's third contention, for which he cited *Meno v. State*, 117 Md. 435, at 438, 83 A. 759, is that the jury should have been cautioned by the trial judge as to the amount of credence to be placed in the testimony of the State's witness, Miss Standlee. Though the language of the *Meno* case is not en-

tirely clear we are certainly not prepared to accept the appellant's interpretation of it as *requiring* a cautionary instruction where the witness has some relationship to the offense, but is not an accomplice. None of the cases cited in *Meno* goes so far as to support such a proposition. There was no suggestion in *Basoff v. State,* 208 Md. 643, 119 A. 2d 917, which cited *Meno* (at p. 654 of 208 Md.), that *Meno* held as the appellant contends. We find it unnecessary, however, to pursue the matter to a final conclusion.

A sufficient answer to this contention of the defendant is that, even if it were to be assumed that the defendant was entitled to such an instruction which he now says should have been given, he did not request it or except to its not being included in the charge. Concededly, this question was not properly raised or preserved for review; and we see no such "plain error prejudicial to the rights of the accused" as would warrant review, despite the absence of due objection, under the concluding clause of Rule 756 g. The jury was amply apprised by the testimony of the activities of the State's witness and of the fact that she had been granted immunity.

The appellant's fourth contention is that evidence was improperly admitted showing that Miss Standlee, as an employee of the night club, was paid commissions, which were included in her pay envelopes distributed by the defendant, on drinks purchased by male customers with whom she sat and drank when not engaged in her acts at the club. Code (1957), Art. 27, § 152, makes the payment of commissions to "female sitters" an offense. This objection is based upon the rule that evidence of one crime is not admissible to prove the commission of another, but it overlooks the well established exception to that rule under which, as was said in *Callahan v. State,* 174 Md. 47, at 54, 197 A. 589: "The real test of admissibility is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue should be admitted." A similar statement appears in *Cothron v. State,* 138 Md. 101, at 109, 113 A. 620, where this Court said: "Such evidence is not admitted because it is proof of the other crime, but because of its relevancy to the charge upon trial." See, to like effect: *Hitzelberger v. State,* 174 Md. 152, at 161, 197 A.

605; *Jones v. State,* 182 Md. 653, at 656, 35 A. 2d 916; *Purviance v. State,* 185 Md. 189, at 196, 44 A. 2d 474; *MacEwen v. State,* 194 Md. 492, at 501, 71 A. 2d 464 (rule stated, evidence held irrelevant); *Bryant v. State,* 207 Md. 565, at 586, 115 A. 2d 502; *Ward v. State,* 219 Md. 559, at 563, 150 A. 2d 257; and *Presley v. State,* 224 Md. 550, at 558, 168 A. 2d 510, cert. den. 368 U. S. 957.

Applying the test of relevance, we think that this evidence was admissible. It was necessary for the State to prove that the witness was engaged in prostitution and that the defendant knowingly received money or some other thing of value from her earnings (Code (1957), Art. 27, § 430). The evidence objected to, we think, had some relevance in establishing these elements of the offense. That was the basis upon which the trial court admitted it. He said in part:

> "Well, I presume that while there is no charge here of female sitting, the State contends that there is a relationship between being encouraged to buy drinks as a sort of prelude to escorting the women out for purpose of prostitutions, not only because one is in common parlance a sort of comeon, but also in imbibing of alcoholic beverages may very well have aroused their feelings and therefore be an inducement to commit these acts.
>
> * * *
>
> "On that assumption, I am disposed to permit [the State] to prove it."

There was, we think, a sufficient interrelation between the matters stated in the testimony objected to and the offense charged to make the evidence admissible under the relevancy test. See *Presley v. State, supra,* where evidence of another crime was held interrelated with the offense charged and therefore admissible.

The appellant's fifth contention is that the evidence was insufficient to sustain the conviction. We do not agree with it. On the contrary we think that the testimony adduced, if believed, and reasonable inferences to be drawn therefrom were sufficient to warrant the verdict of guilty. It was, we think, permissible

for the jury to find that the State's witness was a woman engaged in prostitution and to draw the inferences that the defendant knew it and knew that her early departures from the night club where she was employed were for the purpose of engaging in prostitution, and that the money which she gave him when she left on such expeditions represented earnings from prostitution. That was enough. Cf. *Kolker v. State,* 230 Md. 157, 186 A. 2d 212. The credibility of the witnesses was for the jury to pass upon. *Leek v. State,* 229 Md. 526, 184 A. 2d 808.

This leaves for consideration only the appellant's last contention, based upon a variance, which he sought to raise at the oral argument of this case. The instant case was argued after the *Seidman* case, but before the opinion in that case was filed. A similar question of variance was there involved, though it arose in a different way. There the defendant attacked the indictments on the ground that the names of the women engaged in prostitution there involved were known to or could readily have been ascertained by the grand jury. Here the appellant, after the State's witness testified to the effect that she had appeared before the grand jury, moved on two occasions to strike her testimony on the ground of a variance between the proof and the indictment. On the second occasion the motion appears to have been offered almost, if not actually, as a ground for a motion for a directed verdict. The appellant, despite Rule 828 b 1, included neither the indictment nor either of the motions just referred to, nor the court's ruling thereon, in his appendix or printed record extract. Likewise, the appellant, in spite of Rule 831 c, subsecs. 2 and 4, failed to include in his brief any question or contention based upon a variance or any argument in support of his present position thereon.

The short answer to this contention is that it is raised too late under Rule 831 c, subsecs. 2-4, and Rule 846 f, and that it is not presented by the appellant's appendix or printed record extract, as required by Rule 828 b 1. *Comptroller of the Treasury v. Aerial Products Co.,* 210 Md. 627, at 644-45, 124 A. 2d 805; *Gray v. State,* 219 Md. 557, 150 A. 2d 221 (semble); *Mullan v. Mullan,* 222 Md. 503, at 506, n. 1; *Baxter v. State,* 223 Md. 495, at 502, 165 A. 2d 469; *State Roads Comm. v. Halle,* 228

Md. 24, at 31, 178 A. 2d 319; *Hyde v. State,* 228 Md. 209, at 218, 179 A. 2d 421; *Nutter v. Non-Profit Housing Co.,* 230 Md. 6, at 17, 185 A. 2d 360. Under Rule 846 f this court "may decline to hear or consider oral argument on any legal proposition or question of fact not presented in the briefs." If this Rule implies that it is discretionary on our part to consider the contention now urged, we are not inclined to exercise any such discretionary power because we think that the record points to the conclusion that the appellant was not misled, kept in ignorance or actually prejudiced in the preparation of his defense by the statement in the indictment that the name of the woman involved was unknown to the grand jury. The record shows that the indictment was filed on September 8, 1961, that a copy of it was served on the defendant on September 28, that the defendant filed a motion for discovery on October 6, that the State filed an answer excepting to it on October 13, and that the defendant withdrew the motion in open court on October 23, 1961. Trial of the instant case did not begin until more than a month later—on November 28, 1961. The record does not disclose why the motion was withdrawn. In it the defendant sought as to the indictment in this case (a) the names and addresses of all witnesses whom the State proposed to use at the trial; (b) a statement whether the State had listed on the indictment the names of any witnesses whom it did not intend to use at the trial [Miss Standlee was not among those listed on the indictment.] ; (c) a statement as to whether the State contemplated the use of any witness, other than those who might be listed in response to demand (a), "and if so when the Defendant might hope to be informed as to the names and addresses of such potential witnesses;" and (d) a specification of the section of the pandering laws which he was accused of violating. We find it difficult to believe that the demand would have been voluntarily withdrawn by the defendant's experienced counsel of his own choice who represented him, without the defendant having received or arranged to receive the desired information as to witnesses. We also note from our opinion in *Seidman* that information disclosing the names of the women there involved, identifying one with each indictment, was furnished Seidman on October 17, which was six days prior to

the defendant's voluntary dismissal of his motion. We also note from the record in the instant case that at the trial the defendant's counsel and the defendant, too, had been using a copy of a statement made by Miss Standlee to the police on June 8, 1961. We further note from the record in the instant case that the defendant raised no contention based upon variance in his motion for a new trial, (though, of course, that would not prevent his raising it on appeal). The defendant's motion for a new trial also shows that Miss Standlee had testified at one or both of the trials of Salsbury, which have been referred to above in considering the matter of publicity. The newspaper clippings filed in the transcript also show that Salsbury was represented by the same counsel who represented Mazer. We find it exceedingly difficult, to say the least, to think that the appellant was in fact ignorant of the woman's identity. We may add that even though the State's Attorney's office and the grand jury may have had the worthy intention of protecting the witness by not disclosing her name, this does not authorize them to make their own rules as to what an indictment should contain. We rather suppose that our decision in *Seidman* and our new Rule 728 a 3 will be likely to prevent the recurrence of any similar situation.

We may add that insofar as any question of double jeopardy is concerned, the record in this case, including, of course, the indictment and this opinion, clearly identifies the offense involved and hence this prosecution will be an effective bar to any subsequent prosecution for that offense.

In accordance with our views above expressed both with regard to the review of the question sought to be raised on oral argument, but not raised by the appellant's brief or supported by his appendix, and with regard to the questions properly presented, the judgment will be affirmed.

*Judgment affirmed, with costs.*