## MOSES DAVID HOES *v.* STATE OF MARYLAND

[No. 609, September Term, 1976.]

*Decided February 9, 1977.*

The cause was argued before GILBERT, C. J., and MENCHINE and LOWE, JJ.

*John G. Gill, Jr., Assigned Public Defender,* with whom was *Chris Marder* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *De Lawrence Beard, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The primary question to be answered here is whether the shooting of a "common law" wife by a one-armed man twice within five years [1] could constitute a "plan or scheme" to maim her.

Appellant, who is handicapped by the loss of one arm, pled guilty to one count of assault and battery and was convicted by a jury of the Circuit Court for Montgomery County of assault with intent to maim, carrying a weapon openly with the intent to injure and resisting arrest. The evidence showed that, after having overimbibed alcoholic beverages, appellant went home and engaged in a dispute with Julia Braxton, with whom he had lived for 23 years, and with whom he was living at the time of trial. Although appellant admitted having a discussion with her immediately before the shooting incident (because she would not permit him to accompany her shopping as a result of his inebriated condition) he denied that the discussion amounted to an argument. He also admitted that he had "throwed up the [shot] gun", and that "the gun went off", but denied that he had intended to shoot her. His recollection was hazy:

> "I remember something about I throwed up the gun, you know, you know what I mean, the gun went off, but I wasn't going to shoot her, though."

---

1. The relationship must have been an enduring one. M's. Braxton returned to the extramarital bed after both instances and bore appellant 3 children, ages 10 to 21, during the 23 years of their cohabitation.

But he did.

The police came and apprehended him, but only after a fracas during which he was choked and struck on the head with a flashlight and a pistol was his arrest satisfactorily consummated. The difficulty with containing appellant's resistance was attributed partly to his size, but mostly to the officer's inability to determine how to handcuff a one-armed man. The resistance subsided under the duress described and the dilemma of how to restrain him dissipated.

Appellant denied neither the shooting nor the resistance. His defense was that he did not "intend" to commit the crimes charged.

In order to overcome this defense anticipatorily and to help meet its burden as to the specific intent crimes with which appellant was charged, the State sought to elicit from Julia Braxton that appellant had shot her twice in the side four or five years before. This evidence was admitted by the court over the vigorous objection of appellant, as evidence of a "plan and scheme, prior conduct of the same character." Appellant perspicuously argued below and on appeal that the evidence should have been excluded because the jury might be misled into a conviction because of the offense upon which appellant was not indicted or then on trial, or that he would be prejudiced by confrontation with an offense for which he was not prepared to defend. These were among the reasons for the general rule of exclusion, expressed by the Court of Appeals in *Curry v. State*, 117 Md. 587, 593:

> " 'Such evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it, and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done.' "

The State, on the other hand, counters that the evidence was admissible, if not upon the ground given by the court,

then upon either of two exceptions to the exclusionary rule, intent or absence of mistake or accident:

"The evidence of the other crime, involving as it did identical parties and circumstances (*i.e.* shooting), was relevant here to show intent and absence of mistake or accident. It clearly bolstered the State's contention that because he had done it before, when the Appellant picked up the shotgun, loaded it and fired it at Ms. Braxton, he intended to hit her and did not do so mistakenly or accidentally."

*Ross v. State*, 276 Md. 664, is the most recent case to set forth the rule for excluding prior criminal acts:

"The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. *Harrison v. State*, 276 Md. 122, 345 A. 2d 830 (1975), *MacEwen v. State*, 194 Md. 492, 500, 71 A. 2d 464 (1950); *Young v. State*, 152 Md. 89, 91, 136 A. 46 (1927); *Weinstein v. State*, 146 Md. 80, 88, 125 A. 889 (1924); *Wethington v. State*, 3 Md. App. 237, 240, 238 A. 2d 581 (1968); *Gorski v. State*, 1 Md. App. 200, 202, 228 A. 2d 835 (1967). This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' C. McCormick, Evidence § 190 (2d ed. 1972)." *Id.* at 669,

and its exceptions;

> "There are exceptions to this general exclusion-
> ary rule which, perhaps, are equally well-
> recognized. Thus, evidence of other crimes may
> be admitted when it tends to establish (1)
> motive, (2) intent, (3) absence of mistake, (4) a
> common scheme or plan embracing the com-
> mission of two or more crimes so related to each
> other that proof of one tends to establish the
> other, and (5) the identity of the person
> charged with the commission of a crime on trial.
> *Wentz v. State,* 159 Md. 161, 164, 150 A. 278
> (1930); *Cothron v. State,* 138 Md. 101, 110, 113 A.
> 620 (1921); *Chandler v. State,* 23 Md. App. 645, 650,
> 329 A. 2d 430, *cert. denied,* 274 Md. 726 (1974);
> *Wethington v. State, Gorski v. State,* both *supra.*
> Additional exceptions have also been recognized:
> When the several offenses are so connected in point
> of time or circumstances that one cannot be fully
> shown without proving the other, and to show a
> passion or propensity for illicit sexual relations
> with the particular person concerned in the crime
> on trial, *Berger v. State,* 179 Md. 410, 20 A. 2d 146
> (1941); and to prove other like crimes by the
> accused so nearly identical in method as to earmark
> them as the handiwork of the accused. C.
> McCormick, Evidence § 190, *supra." Id.* at 669-670.

But the admissibility of such evidence, even when offered as
being within an exception, is looked upon askance, as highly
suspect because of its potential for prejudicial influence
upon the jury:

> " . . . the introduction of evidence which shows
> other offenses by the accused should be subjected to
> rigid scrutiny by the courts because of the great
> potential for danger which characterizes it. *Berger
> v. State, Young v. State, Weinstein v. State, Gorski*

*v. State,* all *supra;* see *Wethington v. State, supra.* As we said in *Berger:*

> '. . . To come within the exception to the rule that evidence of previous offenses is irrelevant, there must appear between the previous offense and that with which the defendant is charged some real connection other than the allegation that the offenses have sprung from the same *disposition.* The exception does not go to the extent of sanctioning the admission of evidence of the 'propensity' of the accused to commit crimes similar to that for which he has been indicted. . . .' 179 Md. at 414 (emphasis added).' "

*Id.* at 671.

The purpose of this "rigid scrutiny" of evidence offered under an exception, even when there is some "real connection", is to determine whether the proffer of a past crime or crimes is sufficiently necessary to the State's case that the need would outweigh the prejudicial potential to the accused. We recognized this balancing process in *Mollar v. State,* 25 Md. App. 291, 294, quoting McCormick, *Evidence* § 190 at 453 (2nd ed.):

> " '[S]ome of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.' "

Although phrased negatively, the same sort of test was applied by the Court of Appeals in *Young v. State*, 152 Md. 89, 91-92:

> "But whatever may be the object, 'proof of a distinct substantive crime is never admissible *unless there is some logical connection between the two, from which it can be said one tends to establish the other.* Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues, that tend to confuse and mislead the jury. * * * From the nature and prejudicial character of such evidence, it is obvious it should not be received *unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner.* It will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved other than the tendency to commit one crime as manifested by the tendency to commit the other.' 8 R. C. L., sec. 200, p. 206. See also 1 *Wigmore on Evidence*, sec. 304." (emphasis added).

In other words, we must decide if evidence of the prior shooting was relevant to the crimes charged, and if so, whether its potential prejudice outweighs its relevance.

The cases dealing with admissibility of prior criminal acts are narrowly decided. Indeed, the results often appear contradictory, for the basis upon which such evidence is found relevant is seldom clearly articulated. In two cases involving prosecution of doctors for illegal abortions, for instance, the Court of Appeals held that evidence of prior conduct of like nature should have been excluded in one case but was admissible in the other.

In *Meno v. State*, 117 Md. 435, 440 the evidence was held to

be inadmissible, although its erroneous admission in the case was harmless:

> "The State attempted to prove by the witness Ludi, that the accused had told him that he had performed operations on or treated other girls as showing a familiarity on the part of the traverser with what could be done to rid a woman of a child. This evidence was admitted over the objection of counsel, and this ruling of the Court was made the subject of the 8th exception. This evidence was inadmissible and should have been excluded."

In *Wilson v. State*, 181 Md. 1, 3, by contrast, such evidence was held clearly admissible:

> "Dr. Wilson complains because Mrs. Stanley testified that she saw him in November, 1940, and when she saw him again on July 31, 1941, she said to him: 'I guess you know what I am here for.' He contends that this testimony prejudiced the jury against him, because they could infer from it that he caused an abortion in November, 1940. It is a general rule that when a person is placed on trial for an offense, he should not be prejudiced by the introduction of evidence of other independent acts of wrongdoing. But while guilt cannot generally be established by proving that the defendant has committed other crimes, *nevertheless it is firmly established that evidence of declarations and acts may be admitted to show intent, or a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. Young v. State,* 152 Md. 89, 136 A. 46; *Meno v. State,* 117 Md. 435, 440, 83 A. 759. The abortion statute in Maryland does not apply where a physician superintends a case of abortion occurring spontaneously as the result of an accident, constitutional debility, or any other natural cause. So, in an abortion case, *where guilty intent is an essential element of the crime charged,*

> *the State can prove a relevant fact which tends to show the defendant guilty of the crime charged, notwithstanding that it may also show him guilty of a similar distinct offense. People v. Popescue, 345 Ill. 142, 188 N. E. 739, 77 A. L. R. 1199, 1209. Such evidence is admitted not because it is proof of another crime, but because of its relevancy to the charge in issue. For a person cannot, by multiplying his crimes, diminish the volume of competent testimony against him. State v. Adams, 20 Kan. 311, 319; State v. Sullivan, 139 Ore. 640, 652, 11 P. 2d 1054, 1058." (emphasis added).[2]*

We find a "logical connection", as discussed by *Young v. State, supra,* and *Wilson v. State, supra,* present in this case. As appellant strenuously contends in his brief (for other purposes), at least two of the crimes with which appellant was charged are "specific intent" crimes, *i.e.,* crimes requiring a specified intention in addition to the intentional doing of the *actus reus* itself. These two crimes were assault with intent to murder and assault with intent to maim. It was necessary that the State prove: (1) an assault on Julia Braxton (2) made by the appellant (3) with the intent to murder or maim *her.* The relevance of the prior conduct rests upon two things: the similarity of the method of assault and the fact that it was upon the same victim. That he had shot her before in like manner is inferentially relevant to his intent to do so this time, especially in light of his admission that he had discharged the firearm. As the State pointed out, the fact that appellant had shot M's. Braxton a few years earlier makes it less likely that shooting her this time was an accident or mistake.[3] Had the prior assault been directed toward another victim, it would have had little or no relevance in evaluating his intent towards M's. Braxton. Indeed, such an inference of intent to do that

---

**2.** It is noteworthy that in Wilson the indication or evidence of a prior crime, if committed, was upon the same person who was the victim of the crime for which the accused was being tried.

**3.** While the Court in Ross, *supra,* listed intent and absence of mistake as separate exceptions, they clearly often overlap, as here.

which was done would be greater the more often it had occurred, in like manner and to the same person. The similarity of nature and victim creates the relevant interrelationship.

The case of *Jones v. State*, 182 Md. 653, provides persuasive precedent that the evidence at issue here is relevant. Jones, charged with murder in the first degree, objected to the introduction of evidence that he had assaulted the deceased on two prior occasions, and that one of the assaults had resulted in a conviction for assault with intent to murder. Rejecting his complaints, the Court said:

> "These other crimes of the accused, having been committed on the same person, are so closely connected to the offense charged as to be evidence as to the intent and motive of the accused in this case. We therefore believe that the trial court was correct in admitting this evidence, the weight of it to be determined by the jury." *Id.* at 657.

Nor are we overly concerned in this case with the remoteness of the prior shooting time when we consider the purpose for which the evidence is admissible. That issue is subsumed in our search for relevance. As pointed out by I *Wharton's Criminal Evidence* § 260, p. 622, it is:

> "the nature of the prior crime and the crime charged and the logical interrelationship of such crimes are the controlling factors in determining whether a particular lapse of time is sufficiently substantial to make the prior crime too remote."

Having thus determined that the evidence of the prior incident is relevant to prove an essential element of the incident for which appellant was charged, we must decide if the potential for prejudice outweighs its need. See *Mollar, supra.* As indicated, the prejudice with which we are concerned is not that which simply enhances the State's case or harms appellant's defense. All evidence of an inculpatory nature is "prejudicial" in that sense. Here, we are concerned with the likelihood that evidence of a prior offense will

persuade the jury that appellant is a "bad man", and because of his prior evil conduct or criminal act, the probability is greater that he committed the crime charged. In other words, the jury will be predisposed to convict his "reputation" upon the proverbial inability of a leopard to change his spots theory, rather than determining guilt or innocence upon the evidence directly related to the specific crime charged. It is the court's responsibility to offset or avoid as well as it can, the inherent human tendency to substitute a predisposition of guilt for the constitutional presumption of innocence when an accused's reputation as a "bad man" becomes known. It is for this reason that we were admonished in *Ross* that such evidence should be subjected to rigid scrutiny.

The factors of importance militating toward admissibility in this case and diminishing the possibility of conviction for the wrong reasons are four:

1. The pertinent crimes charged were specific intent crimes. The issue of specific intent was central to both the State's case and appellant's defense, and there was clearly a *need* to present all relevant evidence of intent to the jury. See McCormick, *supra*, § 190 at 453. The only other evidence of intent available to the State was whatever intent can be inferred from the current shooting itself. Moreover, if appellant had in the past threatened M's. Braxton's life or threatened to maim her, such verbal conduct would have been both relevant and admissible to show his intentions when he carried out his threats at a later date. We are unable to see why it is more prejudicial to show intent by consummated conduct from which he could inferentially have attempted such acts, than it would have been to introduce as yet unconsummated verbal threats that he would do so at a later time.

2. It is significant in our balancing process to note that appellant conceded having held and having discharged the gun. Neither the corpus delicti nor appellant's participation as the causative factor are in dispute. Indeed, on cross-examination, appellant admitted his guilt at least to the extent of an assault and battery on M's. Braxton. Had

either appellant's criminal agency or the corpus delicti of the crime been in doubt, potential prejudice would have been greater and may well have offset the State's need to show intent by prior conduct.

3. No objection was raised here or below to the quality of evidence that the prior shooting occurred or that appellant was the perpetrator. The victim herself testified to the previous shooting. Had the evidence on either point been less convincing, the prejudicial potential may have been increased and its relevance diminished. See McCormick, *supra*, § 190 at 453.

4. Finally, it is at least noteworthy that the State did not flaunt the prior act by repetitious inquiry and it did not argue it extensively. Beyond the initial single response there was no further mention of the prior shooting by anyone except the trial judge, and then only reluctantly upon appellant's insistence for a limiting instruction. Even there appellant can point to no prejudice, for the judge carefully narrowed the jury's consideration so as to avoid "directing the attention of the jury from the [issue] before it . . ." *Curry, supra,* 117 Md. at 593.[4]

Nor do we find prejudicial error because the judge admitted the testimony for the wrong reason, *i.e.,* to show the exception of showing a "plan or scheme" rather than the proper exception of showing "intent". The wrongfully assigned exception would not have been before the jury but for the express request of appellant:

> "MR. GILL: If it please the Court, first of all, I would request the Court to give a limiting instruction on the evidence of the prior crime that Mr. Beard introduced through Julia Braxton. The

---

4. We recognize that the evidence of the prior shooting was elicited long before appellant took the stand and denied intent, and that it was used as direct evidence rather than rebuttal. While it is conceivable that this facet may increase the prejudicial effect of evidence of other offenses in a proper case, such is not the situation here. Moreover, in Polisher v. State, 11 Md. App. 555, 585, we pointed out that the State is not required to establish prima facie every element of the crime charged before it may introduce evidence of prior offenses, for it is sometimes that very evidence which helps to prove some elements of the crime currently at issue.

limiting instruction would be they cannot consider that as evidence that he is guilty on this occasion or because he is a generally bad man, but only for the specific purpose for which Your Honor admitted it, which I think you said was common scheme or plan.

THE COURT: Yes.

MR. GILL: So for that limited purpose. I still object. I don't want to withdraw my objection to that evidence, but I think we need an ameliorating instruction.

THE COURT: I will do it if you want it. I did not do it, but if you want it I will be glad to do it."

Appellant received precisely that which he requested. The mistaken reason for admitting the evidence was harmless beyond a reasonable doubt, see *Dorsey v. State*, 276 Md. 638, 646-659, and in the absence of an exception to the instruction assigning the wrong reason, there was no error. Md. Rule 756 g.

Appellant next questions:

"Whether the court, by giving an incorrect and misleading definition of specific intent, and then refusing to give a corrective instruction requested by counsel, committed reversible error, given that specific intent was an element in Counts 2, 5, and 8?"

We think not. Appellant's complaint is that the court declined to give his numbered instructions (which are not in the record), apparently taken by him from *Maryland Criminal Jury Instructions and Commentary*, 1975 Ed. Although the judge's instructions are not a model to emulate in preference to the text models, we think that when read as a whole, they conveyed the message to the jury that specific intent was required for the specific intent crimes of which appellant was convicted, *i.e.*, assault with intent to maim and carrying a weapon openly with intent to injure. The instructions fairly covered all of the issues requested. See *Gordon v. State*, 14 Md. App. 245, 259.

We are further convinced that the court properly refused to grant a specific intent instruction for resisting arrest. If there is no right to resist a lawful arrest, *Jordan v. State*, 17 Md. App. 201, 206-209, it follows that an accused's intent while resisting is not a necessary element for the State to prove.

The last issue raised by appellant was the sufficiency of the evidence to convict him of assault with intent to maim. We have held that the pointing of a gun toward another human and discharging it in random fashion is sufficient to support inferences of intent to do grievous bodily harm. *Mahoney v. State*, 13 Md. App. 105, 110. That he specifically intended that bodily harm to have been directed at the victim may be inferred from the prior shooting of her in like manner. The evidence was sufficient to show that appellant did just that.

*Judgments affirmed.*
*Costs to be paid by appellant.*