ROBERT S. CHENAULT *v.* DIRECTOR,
PATUXENT INSTITUTION

[App. No. 51, September Term, 1975.]

*Decided October 10, 1975.*

Before ORTH, C. J., and MORTON and LOWE, JJ.

LOWE, J., delivered the opinion of the Court.

Robert S. Chenault has applied to this Court for leave to appeal the judgment of Judge Marvin J. Land of the Circuit Court for Baltimore County, who redetermined that applicant was still a defective delinquent pursuant to Md. Code, Art. 31B, Sec. 10.

On August 7, 1974 applicant failed to return from conditional parole. On December 12, 1974 he was arrested in Montgomery County and held in its Detention Center pending disposition of charges against him. Patuxent officials were duly notified. While awaiting trial in Montgomery County, he petitioned the Circuit Court for Baltimore County on January 28, 1975 for redetermination of his defective delinquency.

Judge Kenneth C. Proctor responded by appointing an attorney to represent applicant in the redetermination hearing and advised applicant that his counsel would ask Patuxent Institution to have applicant returned for examination pursuant to the hearing.

A series of correspondence between applicant and court ensued, substantially to the effect that applicant opposed returning to Patuxent for evaluation because of some real or imagined threat to his life. He was advised that such evaluation and examination was necessary for the redetermination. Petition for applicant's return to Patuxent for the redetermination evaluation was filed by the State's Attorney on May 13, 1975 and order signed by Judge Land the following day. The evaluation was made and report by interval note filed with the court on June 5, 1975 at the hearing on redetermination.

Applicant first contends that because the Patuxent officials required his physical presence for the diagnostic staffing and evaluation report he was "caused a wilful and unreasonable delay in [his] hearing date." Such contention is spurious. Any delay was the direct result of his escape and subsequent detention by Montgomery County officials pending unrelated charges, coupled with his own opposition to efforts to return him to Patuxent for reevaluation.

Furthermore, the constitutional right to a speedy trial does not apply to defective delinquency hearings, which are not criminal in nature. *McCloskey v. Director,* 230 Md. 635.

The second issue is equally without merit. Applicant contends that

">... in order to resolve the matter of getting applicant to Patuxent Institution, his counsel and an assistant State's Attorney for Baltimore County had to refer the matter to the Judge of the Circuit Court for Baltimore County assigned to hear said matters, who, after a chamber's meeting with said attorneys, and during which it became necessary to disclose to his detriment, the reasons why applicant was at the Montgomery County Detention Center. ... This procedure which was necessitated by the inactivity of Patuxent Institution officials thus tainted, unfairly, the hearing that applicant was entitled to have and weakened or destroyed his defenses therein."

Presumably the in-chambers hearing resulted from the State's Attorney's petition to transfer applicant, over his protest, to Patuxent for the evaluation. We can see nothing, and are informed of nothing by applicant, to indicate prejudice from his having imputed the knowledge of his detention for unrelated matters in Montgomery County to the judge who decided the petition to transfer applicant for evaluation. Such bald allegation with no specificity whatsoever provides no ground on which to grant an application for leave to appeal. *Shields v. Director,* 11 Md. App. 347, 349.

The final allegation of error provides cause for greater concern. Over applicant's objection, an Interval Note prepared at Patuxent Institute was admitted into evidence. The note, made pursuant to the reevaluation, contained a brief summary of applicant's history which had been fully set forth in the original Institutional Report supplemented by an Interval Note prepared for an earlier redetermination

hearing. Following that summary was a "bring-to-date" of applicant's activities which included the following:

"Then on July 1, 1974 he was reparoled to the Half-Way House where he again violated the terms and conditions of his parole and on August 8, 1974 he escaped from supervision and a retake warrant was issued. *The patient was apprehended on September 13, 1974 [sic] [1] when he was arrested in Montgomery County on charges of Burglary and Concealed Weapon (knives [sic] and a loaded tear pistol), and he is presently awaiting trial for these charges.*" [Emphasis added].

Because the "Interval Note from the Patuxent Institution which contained references to his arrest in Montgomery County was admitted into evidence . . .", applicant complains that he was "denied due process." He would have us compel suppression of the Interval Note containing the offensive reference.[2] Although suppression of the entire note seems extreme, on July 28, 1975, less than one week after applicant's application was filed, the Court reported the opinion by Judge Gilbert of *Rocky Floyd Arbaugh v. Director, Patuxent Institution*, 27 Md. App. 662. Judge Gilbert said:

"We think that evidence relative to the fact that there is a pending criminal charge should be deleted from the record before it is offered into evidence. The pendency of a criminal charge may tend to prejudice the jury. Institutional misconduct, which is admissible, may be viewed in one light, but indictments and other pending criminal charges are usually seen in a more ominous perspective."

In short, we held that evidence of an arrest (as distinguished

---

1. The record indicates that the arrest in Montgomery County was *December* 13, 1974 rather than September.

2. The trial judge denied a motion to suppress the offensive reference to applicant's arrest and denied an objection to the admissibility of the Interval Note containing that reference.

from actual acts of misconduct) is not relevant, 3A *Wigmore on Evidence,* Sec. 980 a, and if admitted is not harmless error because of its potentially prejudicial effect upon a jury.

We have noted, however, that applicant was tried by the court without the aid of a jury thus substantially lessening the probability of prejudice. The Court of Appeals has clearly recognized that the attributes peculiar to the judiciary compel the trial judge

"... by his legal training, traditional approach to problems, and the very state of the art of his profession, . . . [to] early learn to perceive, distinguish and interpret the nuances of the law which are its "warp and woof." *State v. Hutchinson,* 260 Md. 227, 233.

Writing for the Court, Judge Finan made it clear that:

"... we have consistently reposed our confidence in a trial judge's ability to rule on questions of admissibility of evidence and to then assume the role of trier of fact without having carried over to his factual deliberations a prejudice on the matters contained in the evidence which he may have excluded." *Id.* at 236. *Accord, State v. Babb,* 258 Md. 547.

While such was the primary teaching of *Hutchinson,* another message is discernible, *i.e.,* there should be some indication in the record that the trial judge perceived the inadmissible matter and disregarded it. At the very least, there must not be any reviewable indication that the conviction (or determination of defective delinquency, as in *Arbaugh, supra,*) was based, in whole or in part, on the legally inadmissible evidence. Judge Finan said:

"In the case at bar the trial judge affirmatively stated that he rejected the inculpatory statement, noting that '[I] completely disregard said statement and give no weight to it in reaching a verdict.' This

is, therefore, not a case where we are left without knowledge as to whether the conviction was based, in whole or in part, on a legally inadmissible confession; Judge Cole stated flatly that he was not basing his verdict on the statement." *State v. Hutchinson,* 260 Md. at 234.

It is apparent here that the trial judge gave considerable weight to the unproven facts underlying the arrest. His opinion contained intermittent references to the circumstances under which applicant was arrested and recited the facts underlying the crimes with which applicant had been charged.

"I don't know what will happen in the case that is coming up in Montgomery County. That may be dismissed, he may get a suspended sentence, if he is found guilty. I have no control over that. I have no control over where he should go, or how long he should stay.

. . .

He knows he is supposed to be under their jurisdiction, but he does not comply with the rules, and for almost four months he's on the loose, until he's arrested exercising his not criminal misconduct but terribly poor judgment by getting into an elementary school at 3:30 in the morning on a rainy evening, and I am not finding him guilty of that charge, but if there was ever an example of not finding his way in society, it's being picked up at 3:30 in the morning inside an elementary school with a tear gas gun in your possession, which involves three different violations of the criminal law."

Neither the avoidance of the use of a criminatory predicate, nor the expressed reluctance to consider applicant as convicted of the untried charges pending, alter the judge's apparent assumption of the truth of the facts alleged, which

if proven, provided the foundation for a conviction of the charges pending. Here we are not merely "... left without knowledge as to whether the conviction was based, in whole or in part, on legally inadmissible [evidence] ...", we are told by the judge of his substantial reliance thereon. We leave for another day what was intended by the Court of Appeals when we are "... left without knowledge. ..."

*Application for leave to appeal granted.*
*Judgment reversed.*
*Case remanded for a new trial.*