JOHN WILLIAM SIMMS *v.* STATE OF MARYLAND

[No. 840, September Term, 1977.]

*Decided July 12, 1978.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*William H. Murphy, Jr.,* for appellant.*

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Joseph S. Lyons, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

Appellant, John William Simms, was convicted at a bench trial in the Circuit Court for Howard County of felony murder and unlawful use of a handgun in the commission of a crime of violence. He was sentenced to a term of life imprisonment for the murder conviction and a concurrent term of fifteen years for the handgun conviction. Appellant, in his enumeration of errors, contends that the trial judge committed reversible error in allowing the State to introduce evidence of other crimes.

The evidence adduced at trial disclosed that on 29 June 1975, at 5:05 A.M., the body of Sharon Anne Tynes, a twenty-four year old woman, was found lying face down at the intersection of Ridgewood and Garrison Boulevard in the northwest section of Baltimore City. The victim's handbag, which had not been tampered with, together with her shoes were found on the opposite corner of the intersection. The autopsy report revealed that the victim had been shot twice in the back.

Kenneth Carter, who lived near the intersection, reported that after hearing two or three gunshots, he looked out his window and saw a male figure backing away from a body lying in the intersection. Although Carter's description of the male figure generally fit that of appellant, he was unable to

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, September 22, 1978.

identify appellant at trial. With the exception of Carter's description, the police were without any other information or leads regarding the identity of the person who killed Sharon Ann Tynes.

Over a year later, 8 August 1976, Christine Speight notified the police that she had just seen the man who had raped her on 14 May 1975. She gave the police the license number of the automobile he was driving. Tracing this number disclosed that the vehicle was registered in the name of appellant. After Ms. Speight made a photographic identification of appellant as the man who raped her, a warrant was obtained, appellant was arrested, and a .38 caliber revolver was recovered during a search of his house. Ballistic tests revealed that this revolver fired the bullet removed from Ms. Tynes' body, and also fired the bullet that wounded one Joan McNeill Savage [1] in December of 1975.

According to the testimony of Joan McNeill Savage on 11 December 1975, at 6:15 A.M., while she was waiting for a bus on the corner of Dolfield and White Oak Avenues in the northwest section of Baltimore City, appellant walked by and said "good morning." He then turned around, pointed a gun, and put his left arm around her waist. With the gun in his right hand, pressed against her side, he ordered her to start walking. While walking, he complimented her on her appearance and remarked "if she did what he said everything would be okay." After walking about a block, she broke away, threw her handbag to the ground and ran. Disregarding her handbag, appellant chased and caught her, whereupon he struck her in the mouth and shot her in the leg.

Christine Speight [2] testified that on 14 May 1975, at approximately 5:30 A.M., while waiting for a bus at the corner of Woodhaven Avenue and Garrison Boulevard in the

---

[1]. At the time of trial, charges were pending against appellant for the crimes of assault with intent to murder and assault upon Joan McNeill now Joan McNeill Savage.

[2]. At the time of trial, appellant had been convicted of raping Christine Speight.

northwest section of Baltimore City, she was approached by appellant.

> He walked past me and patted me on my behind just a few feet — and then I told him not to do that no more and he turned when I went back to look at my paper and he came up on me with a gun.

He then put his left arm around her waist and placed a gun, which was held in his right hand, into her side. While leading her away from the bus stop, he told her that "he wanted some pussy." Appellant led her into an alley and raped her at gunpoint under the back porch of a house.

Appellant testified on his own behalf and denied any involvement in the Tynes murder, the Savage assault or the Speight rape, but admitted the gun belonged to him. He presented alibi witnesses to account for his whereabouts on the days the crimes were committed and presented evidence that other persons had access to his gun on occasion.

The theory of the State's case is that Ms. Tynes was murdered by appellant during an assault with intent to rape. For the limited purpose of showing identity and intent, the trial court allowed the State to introduce evidence which showed that appellant had also raped Ms. Speight and assaulted Ms. Savage with the intent to rape.[3] Appellant argues that the admission of this evidence was highly prejudicial and constituted reversible error.

The rule in this State regarding the admission of other crimes evidence was lucidly explicated in *Ross v. State,* 276 Md. 664, 669, 350 A. 2d 680 (1976):

> The frequently enunciated rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. This

---

3. Although appellant was not charged with assault with intent to rape Ms. Savage, the facts were sufficient to warrant such a charge.

principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is "substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character."

\* \* \*

There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial, . . . and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused.

(Citations omitted). *Accord Cross v. State*, 282 Md. 468 (1978); *McKnight v. State*, 280 Md. 604, 612, 375 A. 2d 551 (1977).

As we perceive it, the evidence of the assault on Ms. Savage was admissible because it was substantially relevant to prove the issues of identity and intent, which were essential elements of the crime for which appellant was charged. Likewise, the evidence of the Speight rape was admissible because it was substantially relevant to prove the issue of intent.

## IDENTITY

Although evidence of other criminal acts may be offered to prove identity, "a need for proving identity is not ordinarily of itself a ticket of admission, but . . . the evidence will usually follow, as an intermediate channel, some one or more of the other [exceptions]" *Cross v. State, supra,* (quoting C. McCormick, *Evidence,* § 190 at 451.) *But see Mollar v. State,* 25 Md. App. 291, 333 A. 2d 625 (1975), in which this Court applied the identity exception as the sole grounds for admitting evidence of other crimes. In *Cross v. State, supra,* however, the Court of Appeals, after observing that there was a dearth of analysis on the identity exception, concluded that:

> [P]erhaps the most useful analysis of the identity exception and its scope is contained in Underhill's treatise on criminal evidence, in which it is stated that evidence of other offenses may be received under the identity exception if it shows any of the following:
>
> > (a) the defendant's presence at the scene or in the locality of the crime on trial;
> >
> > (b) that the defendant was a member of an organization whose purpose was to commit crimes similar to the one on trial;
> >
> > (c) the defendant's identity from a handwriting exemplar, "mug shot", or fingerprint record from a prior arrest, or his identity through a ballistics test;
> >
> > (d) the defendant's identity from a remark made by him;
> >
> > (e) the defendant's prior theft of a gun, car or other object used in the offense on trial;
> >
> > (f) that the defendant was found in possession of articles taken from the victim of the crime on trial;
> >
> > (g) that the defendant had on another occasion used the same alias or the same

confederate as was used by the perpetrator of the present crime;

(h) that a peculiar *modus operandi* used by the defendant on another occasion was used by the perpetrator of the crime on trial;

(i) that on another occasion the defendant was wearing the clothing worn by or was using certain objects used by the perpetrator of the crime at the time it was committed;

(j) that the witness' view of the defendant at the other crime enabled him to identify the defendant as the person who committed the crime on trial. [P. Herrick, 1 Underhill's Criminal Evidence § 210, at 637 (6th ed. 1973 & 1977 Cum. Supp.) (Footnotes omitted).]

Applying the Underhill test to the facts in this case, it is manifest that other crimes evidence is admissible under (c), *supra,* to prove identity. The use of a ballistic expert to identify the gun from which a bullet had been fired and, by inference, the gunman, is recognized in this State and in other jurisdictions. *See Edwards v. State,* 198 Md. 132, 141-44, 81 A. 2d 631 (1951), 3 Wharton's Criminal Evidence § 613 (13th ed. 1973). We can think of few characteristics of a crime as unique or identical as bullets fired from the same gun.

In *State v. Frazier,* 550 S.W.2d 590 (Mo. Ct. App. 1977), a state's witness testified that the defendant had come to her residence, knocked on her door and upon receiving no answer fired four shots through the door. The bullets were removed and a ballistics expert testified that they were fired from the same gun that fired the bullets found in a homicide victim's body. The defendant, not unlike appellant here, objected to the witness's testimony on the grounds that it was evidence of a separate and distinct crime, and, therefore, inadmissible.

The court noted the exceptions to the other crimes rule and stated:

> [T]he acid test for determining whether proof of a separate and distinct crime falls within one or more of the enumerated exceptions is its logical relevancy to a particular exception and its tendency to prove a material fact in issue; existence of the requisite degree of relevancy is a judicial question; and, finally, if the requisite degree of relevancy between proof of a separate and distinct offense and the crime charged and being tried cannot be clearly perceived, the accused should be given the benefit of the doubt, and such proof or evidence should be rejected.

> This court concludes that the requisite degree of relevancy can clearly be perceived between the testimony of defendant's ex-wife as to the separate and distinct offense complained of and the homicide for which defendant was being tried because the former tended to prove defendant's access to one of the handguns employed to slay the victim and his identity as one of the perpetrators of the homicide.

550 S.W.2d at 596-97 (Citations omitted). *E.g. People v. Bolton*, 35 Ill. App. 3d 965, 343 N.E.2d 190, 196 (1976); *People v. Smith*, 73 Mich. App. 463, 252 N.W.2d 488, 492 (1977).

Here the ballistics testimony established that the same gun which fired the bullets killing Ms. Tynes also fired the bullet wounding Ms. Savage. Further, the gun in question was owned by appellant and in his possession on the dates the crimes were committed. This evidence, together with the positive identification of appellant as the person who shot Ms. Savage, clearly supports an inference that appellant also shot and killed Ms. Tynes. "[I]t would appear that if there is purpose to [the identity] exception, the circumstances here were molded to fulfill that purpose." *Mollar v. State, supra,* 25 Md. App. at 302.

Accordingly, we conclude that the evidence of the Savage

assault was highly probative as to the identity of appellant and, therefore, admissible.

## INTENT

Having determined that the evidence of the assault on Ms. Savage was properly admissible to prove the identity of appellant as the killer of Ms. Tynes, we now consider whether evidence of that assault coupled with evidence of the Speight rape is admissible to prove that appellant intended to rape Ms. Tynes, thus rendering the homicide a felony murder. The general rule in this State and in other jurisdictions is that evidence of other similar offenses is admissible if relevant to prove the issue of intent.

In *Bryant v. State,* 207 Md. 565, 586, 115 A. 2d 502 (1955), the Court of Appeals noted:

> Where intent is material, the conduct of the accused is relevant to show that intent. Hence, evidence of collateral offenses is admissible, on the trial of the main charge, to prove the intent. To be admissible as relevant, such offenses need not be exactly concurrent. If they are committed within such time, or show such relation to the main charge, as to make connection obvious, such offenses are admissible to show intent.

Likewise, in *Wilson v. State,* 181 Md. 1, 3, 81 A. 2d 631 (1942), the Court of Appeals in an abortion case, observed:

> [W]here guilty intent is an essential element of the crime charged, the State can prove a relevant fact which tends to show the defendant guilty of the crime charged, notwithstanding that it may also show him guilty of a similar distinct offense. Such evidence is admitted not because it is proof of another crime, but because of its relevancy to the charge in issue. For a person cannot, by multiplying his crimes, diminish the volume of. competent testimony against him.

(Citations omitted). *See Jones v. State,* 182 Md. 653, 35 A. 2d 916 (1944); *Hoes v. State,* 35 Md App. 61, 368 A. 2d 1080 (1977).

The following example quoted in Wigmore graphically demonstrates the logical theory of evidencing intent from similar assault offenses:

> Suppose the one hundred and one persons whom he assaulted were women; suppose he touched no man; suppose he had unsuccessfully attempted to ravish one hundred of them, and were arrested at the instant of his knocking down the one hundred and first, and the question were whether his last assault were a mere assault, or an assault with intent to commit a robbery, or an assault with intent to commit a rape; suppose the last woman assaulted should die of her injuries, and the defendant were indicted for her murder; . . . how would you expect, if you were the prosecuting officers, to find any better evidence of the defendant's intent than his attempts upon the other one hundred women? . . .

2 J. Wigmore, *Evidence* § 302 at 198 (3d ed. 1940) (Quoting Mr. Clark, Attorney General, arguing in *State v. Lapage,* 57 N. H. 245, 261 [Argument being approved by the Court]).

For an instructive comment on the use of evidence of similar offenses where the charge is assault with intent to rape, see 2 J. Wigmore, *Evidence* § 357 at 266 (3d ed. 1940).

> (a) Where the charge is of assault with intent, the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise. There need be no limitation as to the person assaulted, because the only purpose is to negative any other than the rape-intent and a previous rape-assault on another woman has equal probative value for that purpose, for it is the general desire to satisfy lust that is involved in this crime, and no particular woman is essential for this. Accordingly, where the charge is

assault with intent, former acts of the sort should
be received without any limitation except as to time;
. . .

Illustrative of cases in which intent to rape is established
by evidence of other similar offenses is *Burnett v. State,* 137
Ga. App. 183, 223 S.E.2d 232 (1976). There the accused was
convicted of aggravated assault with intent to rape. On
appeal he argued that the trial court erred in permitting two
alleged rape victims to testify. The court held:

> The testimony of the two rape victims was
> admissible to prove defendant's intent in his assault
> of the prosecutrix. Although defendant's assault of
> the prosecutrix was aborted by her screams, the
> defendant's intent to rape was properly shown by
> similar methods he employed in the completed rapes
> of others. The testimony of these two victims was
> also relevant to prove identity. Thus, the trial court
> did not err in allowing these witnesses to testify.

*Id.* at 233. Of like import see *State v. Frezal,* 278 So. 2d 64
(La. 1973), where the State, in a prosecution for felony murder
based on a killing in an attempted aggravated rape, called a
witness who testified that the accused had, at an earlier date,
attempted to rape her. On appeal the accused, like appellant
in the instant case, argued that the trial court erred in
allowing the State to introduce evidence of an attempted
rape—a different offense from that which he was charged.
The court held:

> Since it was necessary to prove intent to commit
> attempted aggravated rape, evidence of similar acts
> was admissible . . . . There can be little doubt that
> [the witness's] testimony concerning the attack on
> her by Frezal in May of 1963 was evidence of a
> "similar act" within the meaning of the cited
> authorities. The modus operandi of the two crimes
> is identical. In both instances, Frezal entered the
> residences during the early afternoon while the
> victims were alone. On each ocassion, he threw a

piece of cloth around the victim's neck or head, and when the woman resisted him, he viciously stabbed her time and time again in the upper part of the body and hit her on the face and head. Frezal could have been charged with attempted murder of [the witness] as well as attempted rape, as details of that offense clearly show. The only difference in the two crimes is that [the witness] did not die of her wounds and, thus, was able to later identify her attacker.

*Id.* at 72. (Citations omitted). *See also State v. Hampton,* 215 Kan. 907, 529 P. 2d 127 (1974); *Watts v. State,* 229 Ind. 80, 95 N.E.2d 570 (1950).

Similar use of other crimes evidence can be found in cases in which evidence of other robberies is admitted to prove intent to rob in a felony-murder prosecution. For example in *State v. Evans,* 249 La. 861, 192 So. 2d 103 (1966), the accused was charged with a killing during an attempted robbery. The State was allowed to call several witnesses who testified to other robberies and attempted robberies committed by the accused. In affirming, the Court said:

> Inasmuch as the charge of murder was made herein under the felony-murder doctrine, it was not necessary to prove intent as to the homicide. However, it was required of the state to establish the armed robbery intent, particularly since the instant attempted robbery had not actually been consummated but was frustrated by the operator's refusing to hand over the money. It was incumbent on the state to show, in other words, that the killing occurred while the defendants were attempting an armed robbery. Therefore, evidence of the other crimes referred to, they having been similar in nature, indicative of a pattern, and reasonably close in point of time to the crime charged, were admissible to disclose such intent.

*Id.* 192 So. 2d at 106. *See also People v. Wright,* 315 Mich. 81, 23 N.W.2d 213 (1946).

The principle distilled from the cases cited is that evidence of similar offenses is admissible when relevant to establish intent. In the case at bar appellant was charged with felony murder based on the theory that the killing of Ms. Tynes occurred during an assault with intent to rape. Although the identity of appellant as the criminal agent was established, the homicide still would not constitute murder in the first degree, unless it was shown that appellant assaulted Ms. Tynes with intent to rape.[4] In consequence thereof, evidence of similar offenses was highly relevant and admissible to prove appellant's intent.

We think the rape of Ms. Speight and the assault of Ms. Savage bear a striking similarity to each other and to the murder of Ms. Tynes. All three crimes were committed within the same general neighborhood; all three victims were young women, apparently waiting for buses in the early morning hours; all three victims were approached by an assailant armed with a gun; in all three incidents robbery was not the motive, as evidenced by the assailant disregarding the handbags of the victims.

As to further similarities, both Ms. Speight and Ms. Savage identified appellant as their assailant and testified that he used the same technique in forcing them to walk with him, i.e., he placed his left arm around their waist and pressed a gun, held in his right hand, into their side.

In determining the intent accompanying these offenses, we look not only to the similarities of the offenses but to appellant's words, acts and conduct and the reasonable inferences drawable therefrom. The assault on Ms. Speight culminated in forcible sexual intercourse; thus appellant's intent in that instance was unmistakably clear—to satisfy his lust. As to the assault on Ms. Savage, appellant's method was

---

4. "The essential ingredients of the crime of assault with intent to rape are (a) an assault, (b) an intention to have carnal knowledge of a female, and (c) a purpose to carry into effect this intention with force and against the consent of the female."

Middleton v. State, 6 Md. App. 380, 385-86, 251 A. 2d 224 (1969); Christensen v. State, 33 Md. App. 635, 638-41, 365 A. 2d 562 (1976).

identical to that used in the assault of Ms. Speight. This assault, however, did not result in forcible sexual intercourse, as apparently intended, because the victim was able to make her escape.

Regarding the Tynes assault, the circumstances were the same, i.e., the victim was a young woman, she was assaulted by an assailant with a gun, and it occurred in the early morning hours at a bus stop in the northwest section of Baltimore City. The only difference is that Ms. Tynes, unlike Ms. Savage, died of her wounds and was unable to later identify her attacker. The question of intent is one of fact. Because one's intent is subjective in nature, proof is seldom direct but is usually inferred from proven circumstances. *Weaver v. State,* 226 Md. 431, 434, 174 A. 2d 76 (1961). Based on the similarities of the crimes in question, we believe the trier of facts could logically, naturally and by reasonable inference conclude that appellant assaulted Ms. Tynes with the intent to rape.

## BALANCING

Having concluded that the evidence of the other crimes was admissible because it was relevant to the issues of identity and intent, two well-established exceptions to the exclusionary rule pertaining to other crimes, we are mindful that

Though the evidence may fall within one or more of the exceptions, the trial judge still possesses discretion as to whether it should be received. In the judicious determination of this issue he should carefully weigh the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission. In some cases, this may require that evidence of the criminal actions of the defendant be totally excluded; in others, admission of portions or all of the evidence of the

defendant's specific criminal actions may be permissible.

*Cross v. State, supra.* (Citations omitted).

In *Jones v. State,* 38 Md. App. 432, 381 A. 2d 317 (1978), we noted that evidence of other criminal acts was not automatically admissible simply because it fit one of the certified exceptions to the other crimes rule; rather its admissibility depended on the trial judge appropriately balancing

> on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

*Id.* at 437-38, quoting C. McCormick, *Evidence,* § 190 at 453. *See also Brafman v. State,* 38 Md. App. 465, 475-76, 381 A. 2d 687 (1978); *Hoes v. State,* 35 Md. App. 61, 368 A. 2d 1080 (1977).

Applying the above balancing test, the propriety of admitting the evidence of the Speight rape and the Savage assault is apparent; the State had a *real need* for this evidence in order to establish identity and intent, which were contested issues in the case. Here appellant was charged with felony murder and the only evidence available to prove his intent in committing the underlying felony, assault with intent to rape, was the evidence that he had committed similar offenses. Likewise, evidence of the assault on Ms. Savage was needed by the prosecution not only to bolster the ballistic testimony that Ms. Savage was shot with the same gun that fatally wounded Ms. Tynes, but also to identify appellant as firing the gun. The need for this evidence was especially significant because appellant presented witnesses who testified that they too had access to this gun.

The *convincingness* of the other crimes evidence is indisputable. Appellant's involvement in the other crimes was clear. At the time of trial, he already had been tried and convicted of raping Ms. Speight. In addition, he had charges pending against him for assaulting Ms. Savage with the intent to murder.

As to the *degree of prejudice* the other offenses would have on the jury, we agree with the following:

> Proof that a defendant has engaged in a second criminal act of the same sort for which he is being tried is not likely to rouse the jury to "overmastering hostility," that phrase refers to instances "where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it."

> ... [The law] does not demand exclusion of highly probative evidence simply to prevent noisome odors about the defendant from reaching the jury's nostrils.

*United States v. Bradwell,* 388 F. 2d 619, 622 (1968). (Citations omitted). Nor can appellant "by multiplying his crimes, diminish the volume of competent testimony against him." *Wilson v. State, supra,* 181 Md. at 3. We believe the probative value of the other crimes evidence sufficiently outweighed its prejudicial effect; therefore, its admission was proper.

Furthermore, this case was tried before a judge and not a jury of laymen. "The assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence, lies at the very core of our judicial system." *State v. Babb,* 258 Md. 547, 550-51, 267 A. 2d 190 (1970); *See also State v. Hutchinson,* 260 Md. 227, 233, 271 A. 2d 641 (1971); *Chenault v. Director,* 28 Md. App. 357, 361-62, 345 A. 2d 440 (1975). Here the other crimes evidence was admitted and considered with scalpel precision for the limited purpose of showing identity and intent and not to "show a probability that [appellant] committed the crime on trial because he was a man of criminal character." C. McCormick, *Evidence,* § 190 at 447.

A further argument of appellant stems from the State's initial attempt to join for trial several similar but unrelated offenses including the Savage assault charges with the charges in the present case. Appellant contends in essence that because the trial court granted his motion for severance and ordered separate trials, the admission of the evidence of the Savage assault denied him a fair and impartial trial. We disagree. A severance does not mean that evidence of the severed offense is necessarily inadmissible in a separate trial.

In *McKnight v. State, supra,* the Court of Appeals delineated the standard to guide the trial court in the exercise of its discretion when a motion for severance is made. There the Court held: "that a defendant charged with similar but unrelated offenses was entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." *Id.* 280 Md. at 612. The Court, however, in determining whether the evidence of similar but unrelated offenses would have been mutually admissible at separate trials applied the other crimes rule as explicated in *Ross, supra.*

Thus, even though the trial court severed, for purposes of trial, the Savage assault charges from the charges in the instant case, it was not error to admit evidence of the assault on Ms. Savage. Evidence of this offense was clearly admissible under two well-recognized exceptions to the exclusionary rule pertaining to other crimes—identity and intent.

Having found no error for any reason enumerated in this appeal, we affirm.

Judge Davidson concurs in the result.

*Judgments affirmed.*
*Costs to be paid by appellant.*